SULLIVAN v. LLOYD et al.

(District Court, D. Massachusetts.   April 25, 1914.)

No. 504.

**1. COURTS (§ 307*)—UNITED STATES COURTS—JURISDICTION—CITIZENSHIP OF DEFENDANTS.**

Though a former resident of Massachusetts had actually lived in Illinois when suit was brought against him in a Massachusetts court only from June 21st to the end of that month, and then only as a visitor at his brother's house, without residence or place of business in Illinois, if he went there actually intending in good faith to abandon his Massachusetts residence and live in Illinois instead, permanently or for an indefinite time, the proposed change of citizenship and residence was immediately effected.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 850–854; Dec. Dig. § 307.*]

**2. REMOVAL OF CAUSES (§ 26*)—UNITED STATES COURTS—JURISDICTION—CITIZENSHIP OF DEFENDANTS.**

That a person removed from Massachusetts to Illinois to enable himself to invoke federal jurisdiction by means of a change of citizenship in case a Massachusetts citizen sued him did not affect his right to remove the cause to a federal court, unless he intended only an ostensible change to be made without really intending to stay in Illinois longer than might be desirable for the purposes of the apprehended litigation, and with the view of coming back to Massachusetts when those purposes would no longer be served by residence elsewhere.

[Ed. Note.—For other cases, see Removal of Causes, Cent. Dig. §§ 60–63; Dec. Dig. § 26.*]

**3. REMOVAL OF CAUSES (§ 107*)—MOTIONS TO REMAND—SUFFICIENCY OF EVIDENCE.**

On a motion to remand to a Massachusetts state court an action against a former resident of Massachusetts, evidence *held* insufficient to show that his alleged change of residence to Illinois was in good faith, and with no intent of again changing his residence to Massachusetts when circumstances would permit.

[Ed. Note.—For other cases, see Removal of Causes, Cent. Dig. §§ 178, 225–232, 234; Dec. Dig. § 107.*]

**4. REMOVAL OF CAUSES (§ 102*)—DIVERSE CITIZENSHIP—DOUBTFUL JURISDICTION.**

An action removed from a state court on the ground of diverse citizenship would be remanded where defendant's alleged citizenship in another state was not established as a fact free from doubt.

[Ed. Note.—For other cases, see Removal of Causes, Cent. Dig. §§ 218–220, 223, 224; Dec. Dig. § 102.*]

**5. REMOVAL OF CAUSES (§ 102*)—DIVERSE CITIZENSHIP—NECESSITY OF OTHER PARTIES.**

An action removed from a state court on the ground of diverse citizenship will be remanded if the presence of other parties over whom the court is without jurisdiction is necessary to a complete determination of the controversy.

[Ed. Note.—For other cases, see Removal of Causes, Cent. Dig. §§ 218–220, 223, 224; Dec. Dig. § 102.*]

**6. REMOVAL OF CAUSES (§ 102*)—DIVERSE CITIZENSHIP—DOUBTFUL JURISDICTION.**

Where, in an action removed from a state court on the ground of diverse citizenship, there had been no service or appearance which would

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

enable the court to render a judgment against defendant, and it had jurisdiction, if at all, only to the extent of the property for which citizens of the state, summoned as trustees, might be held chargeable, as against an adverse claim interposed by another citizen of the state, the case would be remanded, as the controversy between the adverse claimant and the trustees was not within the court's jurisdiction, and whether it was separable or not was doubtful, and, if determined in the adverse claimant's favor, the court would be without jurisdiction over the main controversy.

[Ed. Note.—For other cases, see Removal of Causes, Cent. Dig. §§ 218–220, 223, 224; Dec. Dig. § 102.*]

7. REMOVAL OF CAUSES (§ 79*)—TIME FOR PROCEEDING TO REMOVE.
Under Rev. Laws Mass. c. 167, § 34, providing, relative to the service of process, that if defendant is out of the commonwealth and no personal service is made on him he shall, in addition to the service therein prescribed, be entitled to further notice of the action as provided in the chapter relative to proceedings against absent defendants, and, upon insufficient service, where no valid service or writ had been made upon defendant, a citizen of Illinois, when a petition for removal was filed, the time had not expired within which he was required to answer, or plead, within Judicial Code, § 29 (Act March 3, 1911, c. 231, 36 Stat. 1095 [U. S. Comp. St. Supp. 1911, p. 142]), authorizing the removal of causes at any time before defendant is required by the laws of the state, or the rule of the state court to answer or plead.

[Ed. Note.—For other cases, see Removal of Causes, Cent. Dig. §§ 135, 136, 139–160; Dec. Dig. § 79.*]

At Law. Action by Mary I. Sullivan against John B. Lloyd and others. On motion to remand to the state court. Motion allowed. See, also, 207 Fed. 815.

Hudson & Nichols, of Boston, Mass., for plaintiff.
Brandeis, Dunbar & Nutter, of Boston, Mass., for defendants.

DODGE, Circuit Judge. 1. The plaintiff describes the defendant in her writ as a citizen of Massachusetts. In his petition to remove he alleges that he is a citizen of Illinois. Upon this issue the burden is upon him. By consent of parties the evidence bearing upon it has been heard, and it is to be decided, by the court.

There is no dispute that the defendant was a citizen and resident of Massachusetts from 1908 until June 19, 1913; his residence being in Malden until April 22, 1913, after that in Boston. He left Boston on June 19, 1913, left Massachusetts on June 20th, and went to Winnetka, Ill., arriving there June 21st. He was born in Winnetka in 1886 and had lived there from the time of his birth up to 1899. He stayed in Winnetka in the house where he was born, then occupied as a residence by his brother William, until the end of June, when he started with his brother for Seattle. He ultimately continued this journey around the world, arriving again in the United States in March, 1914. From New York he went back to Winnetka, where he has since lived. He never returned to Boston after leaving it on June 19th, and has been in Massachusetts only on one day since that time, viz., March 23, 1914, for the purpose of testifying in a suit brought against him by a different plaintiff. He returned to Winnetka as soon as this testimony had been given.

[1] The date of the plaintiff's writ is January 14, 1914, and the

question is as to the defendant's citizenship on that day. It is true that after he left Boston, and before the date of the writ, he had actually lived in Illinois only from June 21st to the end of that month, and only as a visitor at his brother's house, without residence or place of business in Illinois which he could call his own. But, particularly in view of the fact that his domicile of origin was ·in Illinois, I see no reason to doubt that if when he went there in June he actually intended in good faith to abandon his Massachusetts residence and live in Illinois instead, either permanently or for an indefinite time, and if this was the whole of his intent, it would be enough to effect the proposed change of citizenship and residence immediately. Cooper v. Galbraith, 3 Wash. C. C. 546, Fed. Cas. No. 3,193; Marks v. Marks (C. C.) 75 Fed. 321.

[2] Nor would this be any the less true if it was his purpose at the time to enable himself to invoke federal jurisdiction, by means of a change of citizenship effected as above, in case the plaintiff should sue him. Such a purpose would make no difference unless what he intended was only an ostensible change, to be made without real intent to stay in Illinois longer than might be desirable for the purposes of the apprehended litigation, but with the view of coming back to Massachusetts when those purposes would no longer be served by residence elsewhere. Morris v. Gilmer, 129 U. S. 315, 328, 329, 9 Sup. Ct. 289, 32 L. Ed. 690.

[3] There is every reason to believe that the defendant's departure from Massachusetts was induced by apprehension of a suit to be brought against him by the plaintiff, and for the cause of action she has declared on. He admits having promised to marry her on April 28, 1913, and having told her on June 16, 1913, that he would not do so, after preparations for the wedding had been made and one date fixed for it had gone by. It may well be supposed that he left to avoid service of process, and not improbably also in order to bring about a diversity of citizenship as between her and himself. Has he made it clear that his intent to change his citizenship covered no ulterior purpose of changing it back again if circumstances should permit?

Independently of this litigation there is not much reason to believe that Massachusetts would be more desirable to him as a residence than Illinois. He is unmarried, without a family, and had been occupying hired apartments. He had been receiving the income from a considerable estate held in trust for him by two Massachusetts residents, summoned as trustees in this case, but the trust property is situated chiefly in Chicago, and the trust expired by its terms on January 13, 1913, the day preceding the date of this writ. In anticipation of its expiration, his interest in the trust property, with other property belonging to him, was made over by him to new trustees upon another trust for his benefit, at or immediately after his departure from Boston in June, 1913, and it is on their behalf that an adverse claim is made in these proceedings. He had been carrying on a printing business in Everett, Mass.; but this plant was conveyed by him to the new trustees and was sold out in December, 1913. He has no other business interests in Massachusetts, so far as appears. His parents are

not living, and of his three brothers, who are all his nearest relatives, two live in Massachusetts and one in Illinois.

He has testified in a deposition taken April 4, 1914, in Illinois, under a commission from this court, that when he left Massachusetts it was his purpose not to return there to live; that when he arrived in Winnetka he had no present intention of leaving there to go elsewhere; that his purpose to go on the journey which took him around the world was not acquired until the latter part of June, 1913; that he intended then and during his journey to return to Winnetka to live; and that he went back there after his arrival in New York to continue to reside there as his home.

It appears by the deposition of Robert H. Howe, taken February 1, 1914, in Illinois, under a commission from the state court, as well as by the defendant's own deposition, that the defendant told Howe on June 21 and on June 26, 1913, in Chicago, that he had come back to Illinois for good, was going to live in Winnetka, and had removed his place of residence from Boston to Winnetka for that purpose, and had left Boston with the purpose and intention of so removing his residence. The statements on June 26th were made in connection with his acknowledgment before Howe, as notary public, of a deed dated June 19, 1913, executed by him before he left Massachusetts, in which he was described as living in Boston. They are recited in Howe's certificate of acknowledgment on the deed.

It further appears that, before he left Boston, the defendant told Dr. Lloyd to give up the apartments he had been occupying, remove his furniture, and store it in Rhode Island; also, that these directions were carried into effect after his departure, the apartments being sublet and never again occupied by him.

[4] Although all the above acts and declarations by the defendant appear without contradiction, and although they might, under some circumstances, be sufficient for a finding that he became an Illinois citizen as soon as he arrived at Winnetka on June 21, 1913, they were all so evidently prompted by the exigencies of the litigation with the plaintiff, apprehended at the time and actually begun in the following month, that only the absolute necessary inferences from them are admissible. The defendant had not done anything before January 14, 1914, so far as appears, which would render another change of residence back to Massachusetts less easy of accomplishment than the change from Massachusetts to Illinois claimed by him to have been made. There was nothing which the accomplishment of such a further change would require him to give up or undo in Illinois—another journey and a further intent would suffice. The entire scope of his actual intent in going to Winnetka, and whether or not it included any purpose of removal back to Massachusetts when there should no longer be reasons for staying in Illinois, can, of course, be known only to himself. His declaration that he had come back there "for good," and what he has stated about his own intent in his rather meager deposition does not seem to me enough to free the question from doubt, and entitle him to a finding by this court that it was in every respect such an intent as was necessary to accomplish the alleged change in citizenship. Except from the deposition referred to, no

means have been afforded for judgment regarding his candor or credibility. The interrogatories upon which the commission to take this deposition issued were filed, not on the defendant's behalf, but on behalf of Dr. Lloyd, appearing as adverse claimant of the fund sought to be attached. The defendant has appeared here only specially and to deny that valid service had been made upon him, and the deposition was admitted in evidence against the plaintiff's objection. The admissibility of Howe's deposition is also in dispute. It also was taken upon interrogatories filed on Dr. Lloyd's behalf as adverse claimant, and there filed before the defendant had appeared even to remove the case. Though opened in the state court, the deposition has not been filed either there or here. In view of everything that is before me, I am unable to believe the defendant's alleged Illinois citizenship established as a fact free from doubt, and this requires the case to be remanded.

[5, 6] 2. But, supposing the defendant a citizen of Illinois, the case is not to be retained here if the presence of other parties over whom the court is without jurisdiction is necessary to complete determination of the controversy presented. Upon that supposition, there has been no service or appearance which will enable the court to render a personal judgment against him, and it has jurisdiction, if at all, only to the extent of the property, if any, for which the Massachusetts citizens summoned in the state court as trustees, and who have there appeared and filed their answer, may be held chargeable, as against the adverse claim interposed by Henry D. Lloyd, also a Massachusetts citizen, on behalf of the new trustees. Clark v. Wells, 203 U. S. 164, 27 Sup. Ct. 43, 51 L. Ed. 138. A garnishee is not, as a general rule, an indispensable party for the purpose of removal proceedings. Macurda v. Globe, etc. Co. (C. C.) 165 Fed. 104. But here the controversy between the adverse claimant and the alleged trustees is not within the jurisdiction of this court; whether it is separable or not is doubtful, as in Concord, etc. Co. v. Haley (C. C.) 76 Fed. 882; and, if it is determined in the adverse claimant's favor, this court is left without jurisdiction over the main controversy. As in the case last referred to, this leaves it doubtful whether the case ought to be retained in this court.

[7] 3. On the assumption that the defendant was a citizen of Illinois, no valid service or writ upon him appears to have been made, and it cannot therefore be said that when his removal petition was filed the time had expired within which he was required by the laws of the state or the rules of the state court to answer or plead. Judicial Code, § 29. He was entitled to further notice before this period could begin to run. Mass. Rev. Laws, c. 167, § 34.

Upon the grounds above stated, however, the motion to remand must be allowed.