## Liberty Nat. Bank & Trust Co. v. Louisville Trust Co.

## Louisville Trust Co. v. Heitmeyer et al.

Nov. 16, 1943.

Henry I. Fox for appellant Liberty Nat. Bank & Trust Co.

Davis, Boehl, Viser & Marcus and Mortimer Viser for appellee Louisville Trust Co.

Ben F. Washer for appellees Mrs. Georgia W. Finzer Heitmeyer et al.

OPINION OF THE COURT BY VAN SANT, COMMISSIONER—Affirming.

Under the respective wills of John H. Detchen, Louise Detchen, and George W. Detchen, the Louisville Trust Company became trustee for Minnie Detchen, devisee in each instrument of a life estate in certain properties of the testators. Minnie was a daughter of John, and sister of Louise and George. The remainder interest at the termination of the life estate was devised to Charlotte P. Finzer, if living at the time of the decease of the respective testators. Each of the wills provided that if Charlotte were not living at the time of Minnie's decease, the former's daughters, Georgia W. Finzer Heitmeyer and Charlotte P. Finzer, Jr., should take the remainder. On June 10, 1930, Charlotte and her daughters executed and delivered to the Louisville Trust Company a demand note in the principal sum of $5,000, on the back of which they assigned all their rights, titles, and interests in and to the funds to become due them from the three estates recited above upon the termination of the life of Minnie Detchen. Charlotte was the principal in the note, her daughters signing as sureties.

On November 17, 1930, the Louisville Trust Company failed to open for business, and, by resolution of the Board of Directors, requested the State Bank Examiner

to take charge of its affairs. On November 21, 1930, the Fidelity & Columbia Trust Company was appointed its receiver; and, by order of court, took over the assets of the Louisville Trust Company, including the $5,000 note of June 10, 1930, together with the securities pledged as collateral therefor.

On March 28, 1931, the Liberty National Bank & Trust Company was appointed to succeed the Louisville Trust Company as trustee for the Detchen estates. On April 17, 1931, the Fidelity & Columbia Trust Company, as receiver for the Louisville Trust Company, delivered to the Liberty National Bank & Trust Company, as trustee for the Detchen estates, all of the assets of the estates, except those charged with the life estate of Minnie Detchen, which were withheld for the time being but delivered to the trustee on July 24, 1931. There was admitted in evidence a carbon copy of a letter from the receiver to the Liberty National Bank & Trust Company, notifying the Bank of the existence of the $5,000 note and the collateral pledged in security thereof. (The competency of this evidence is questioned, and will be hereinafter discussed).

On the tenth day of July, 1931, Charlotte P. Finzer was indebted to the Liberty National Bank & Trust Company in the sum of $25,000, with accumulated interest, and on that date executed to the Bank, as additional security for the payment of the note, an assignment of all her interests in the three estates aforementioned, including her remainder interest in the portions of such estates impressed with the life estate of Minnie Detchen. By the same instrument, her daughters aforesaid bound themselves as her sureties and likewise assigned their interests in the estates to secure the payment of the note. On the same day the Liberty National Bank & Trust Company was appointed committee for Minnie Detchen, an incompetent. On July 23, 1931, the Liberty Bank acknowledged that it had notice of the existence of the pledge of the collateral on the $5,000 note by letter to the attorney for the receiver of the Louisville Trust Company. On July 24, 1931, as heretofore noted, the receiver delivered to the Liberty Bank the assets of the estates impressed with the life estate of Minnie Detchen.

The Louisville Trust Company was released from receivership, and regained ownership and possession of the $5,000 note prior to the fifteenth day of August, 1938,

on which date it instituted this action against Charlotte P. Finzer and her daughters, asking judgment for the principal amount of the note, together with the accumulated interest; and, by amended petition filed on the seventeenth day of October, 1939, sought enforcement of the pledge given to secure its payment. By intervening petition, the Liberty National Bank & Trust Company set up its lien to the pledged securities by reason of the assignment to it of July 10, 1931. The issues were made by subsequent pleadings and the case submitted to the Court for his findings of law and fact. Judgment was entered in favor of the Louisville Trust Company against Charlotte P. Finzer for the principal sum of the note, together with accumulated interest thereon, and a lien adjudged upon the collateral pledged in security of the payment of the note which lien the Chancellor found to be superior to the lien of the Liberty National Bank & Trust Company, which in turn was adjudged a second lien upon the collateral security. Judgment was entered in favor of Mrs. Finzer's daughters, upon their plea of the seven year statute of limitations applicable to sureties, in respect to their personal liability on the note; and the judgment further recited that no lien existed on whatever interests they might in the future receive from the three Detchen estates, because such interests were mere estates in expectancy, and not the subjects of assignment.

The Liberty National Bank & Trust Company has appealed from the judgment in so far as it adjudged the Louisville Trust Company's lien to be superior to its own. The Louisville Trust Company has perfected a cross-appeal upon the judgment, in so far as it adjudged the Liberty National Bank & Trust Company any lien upon the collateral security. The former has likewise perfected an appeal against Georgia W. Finzer Heitmeyer and Charlotte P. Finzer, Jr., from that part of the judgment which denied the relief sought, both in respect to the personal judgment and the lien upon the collateral assigned to secure the $5,000 note. The appeal last mentioned must be dismissed because, by stipulation of the parties, it appears that Minnie Detchen died during the appeal and previous to its submission. Since Charlotte P. Finzer was living at the time of Minnie Detchen's death, she took the remainder estate in fee simple; therefore, whatever interests her daughters otherwise might have enjoyed in the estate vanished upon the death of

the life tenant, and the question presented on that appeal becomes moot.

Our attention first is directed to the soundness of the Chancellor's ruling that the Louisville Trust Company is entitled to a lien upon the collateral pledged by Charlotte P. Finzer to secure the payment of the $5,000 note. If the lien contended for has been validly adjudged, there can be no question but that it is superior to the Liberty National Bank & Trust Company's lien, in which event the attack upon the latter need not be discussed, because the Louisville Trust Company would have no further interest in the question. The validity of the Louisville Trust Company's lien is attacked upon the ground that the Fidelity & Columbia Trust Company, as its receiver, delivered a portion of the assets in the estates of John Detchen, Louise S. Detchen, and George W. Detchen to the Liberty National Bank & Trust Company, as successor in trust to the Louisville Trust Company, on April 17, 1931, and the remaining portion of such assets (those impressed with the life estate of Minnie Detchen) on the twenty-fourth day of July, 1931, without notice to the successor trustee that the Louisville Trust Company, or its receiver, was claiming any lien on the assets in these estates.

It is a universal rule, with reference to pledges of personal property as security for debt, that possession of the thing pledged must be delivered by the pledgor to the pledgee, in order to create the lien, and that the pledgee must retain possession of the pledged article in order to preserve the lien; and a voluntary and unconditional surrender of the pledged article by the pledgee to the pledgor extinguishes the lien. 49 C. J. p. 933, Section 72; Story on Bailments, Section 299, p. 267; Jones on Pledges, Section 40, p. 28; S. J. Marx Co.'s Trustee v. Marx et al., 223 Ky. 339, 3 S. W. (2d) 644. In Kavinedus et al. v. Maglia et al., 264 Ky. 276, 94 S. W. (2d) 675, 680, the rule is stated:

"The rule of law is well settled that the status of a pledgee, acquiring under such circumstances a special interest in the pledged collateral as such, is that of a purchaser for value of the note and holds the same free from the equities or claims of a third person in the note, where he has, before its maturity, made blank indorsement of his interest in the note to pledgor.

"The applicable rule as to this is thus stated in 21 R. C. L., Section 24, p. 660. 'The holder of collateral security is, at least to the extent to which he has a right to its proceeds, to be regarded as a purchaser entitled to the same immunity against secret equities and unknown defenses as a purchaser would be, who acquired absolute title to the property under like circumstances. Therefore, if he acquires a note or other security in good faith and for value, before its maturity, no defense can be asserted against him arising out of want of consideration, or out of any other matter or equity of which he had no notice when he acquired the security. It may be that the person who transferred the security as collateral did not have the title thereto, or having title held it in trust, or for some special purpose not authorizing him to transfer it as he did. If such be the case, the validity of his transfer as collateral security must be determined by the rules applicable to absolute transfers. If the title to the property was so apparently vested in him that if he had transferred it to an absolute purchaser in good faith such transfer must have been sustained, then also must the transfer as collateral security be upheld.' "

It is argued that the rule recited above is invocable in this case. But this argument is based upon the fallacious contention that the surrender of the assets was voluntary, when, as a matter of fact, they were delivered by the receiver by order of the Court in the administration of the three Detchen estates. The orders entered in all the estates contained a common provision in the following language: "and it (Liberty National Bank & Trust Company, trustee) is directed, after its qualification herein, to obtain from the Fidelity and Columbia Trust Company (the receiver) all securities in the possession and control of said receiver, belonging to said estate, and to receipt therefor, which receipt shall be without prejudice to its rights as trustee, or the rights of any beneficiary to question any action of said Louisville Trust Company, done by it as trustee, and to assert against the assets in the hands or coming into the hands of said receiver, any further claim or claims for which the said Louisville Trust Company may be liable in its fiduciary capacity aforesaid."

The receiver was holding the property for the benefit of the Louisville Trust Company, and subject to any right the latter had in the property at the time the re-

ceiver was appointed. Likewise, the Liberty National Bank & Trust Company received the property as successor trustee of the Louisville Trust Company, impressed with any lien existing upon the property at the time of its receipt. Since both the receiver and the trustee were officers of the Jefferson Circuit Court, and acting under the direction of the Court, there was no voluntary surrender of the assets by the pledgee within the meaning of the rule, and the trustee, as an officer of the Court, certainly had constructive notice of the lien claimed by the pledgee at the time it received the assets from the receiver, which was previous to April 17, 1931, the date it received the possession of the assets of the three Detchen estates which were not impressed with the life estate of Minnie Detchen. The trustee had actual notice of the lien not later than June 9, 1931, by reason of notice contained in the letter from the receiver to the trustee. But it is strongly argued that proof of such letter was utterly failing, because the introduction of the carbon copy of the letter, without proof of the lost instrument, was incompetent. But with this contention we are not in accord. A carbon copy of a letter, i. e., a carbon impression made simultaneously with the original, is a duplicate original and not a copy thereof. The carbon impression may be used, as well as the impression made by the type or the pencil causing the indention; and, when properly authenticated, as it was in this case, becomes an original for all purposes. Gus Dattilo Fruit Co. v. Louisville & N. R. Co., 238 Ky. 322, 37 S. W. (2d) 856; Davis v. Williams Bros. Const. Co., 207 Ky. 404, 269 S. W. 289, and authorities therein cited. But, even if the contrary were true, it was shown by the evidence that the files of the trustee did not disclose the "original," and if the trustee had been called upon to produce the "original," it could not have done so; it was, therefore, competent to introduce the carbon, though it be considered a "copy" properly authenticated. Elkhorn Land & Improvement Co. et al. v. Wallace et al., 232 Ky. 741, 24 S. W. (2d) 560; Muir v. Glossbrenner Motors Co., 211 Ky. 1, 276 S. W. 1058.

It is further argued that, since the receiver was appointed as the result of a voluntary resolution on the part of the Louisville Trust Company, placing its affairs in the hands of the State Banking Commissioner, the receiver's subsequent act in delivering the assets to the trustee was a voluntary act on the part of the Louisville Trust Company. This argument is without merit, and

we believe not seriously contended. Section 165a-18, Carroll's Kentucky Statutes, permits a board of directors, in the circumstances shown in this case, to close the doors and place the affairs of a banking institution in the hands of the State Banking Commissioner for receivership proceedings. Compliance with this section of the Statutes cannot be held to be a voluntary surrender of the assets of the bank, and to so hold would be contrary to public policy.

Therefore, when the Bank took its assignment on July 10, 1931, it not only had constructive notice that Charlotte P. Finzer's interests in the estates in its possession were impressed with the Louisville Trust Company's lien, but it had actual notice of that fact; and it acknowledged notice of this lien the day before the assets impressed with the life estate of Minnie Detchen came into its possession. That being true, the Louisville Trust Company not only did not lose its lien, but the Bank accepted the assignment of the collateral with knowledge of the lien. Therefore, we are of the opinion the Court did not err in adjudging the Louisville Trust Company's lien, and in adjudging that it was superior to the lien of the Liberty National Bank & Trust Company. Having arrived at this conclusion, as we have hereinbefore pointed out, all other questions are moot.

The judgment in the case of the Liberty National Bank & Trust Company v. Louisville Trust Company is affirmed on the appeal, and the cross-appeal in that case is dismissed as moot. The appeal in the case of Louisville Trust Company v. Mrs. Georgia W. Finzer Heitmeyer et al. is likewise dismissed as moot.